UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
                                :

KELVIN DAMASSIA, ARNOLD CABALLERO,  :
DAYANAND BALDEO, MARLON FEGUS,       :
MOHAMMED HOQUE, MUHAMMED        :
KHAWAJA, IFEANYI MALU, MOURAD      :
MANSY, MAXWELL OKEKE, and DELFIN   :
RUIZ, on behalf of themselves and all others    :            04 Civ. 8819 (GEL)
similarly situated,                           :

                                :            **OPINION AND ORDER**

                 Plaintiffs,      :

                                :

        -v-                          :

                                :

DUANE READE, INC.,                   :

                                :

                Defendant.      :

                                :
----------------------------------------------------------------x

Tarik F. Ajami, Outten & Golden LLP, New York,
NY (Adam T. Klein, Justin M. Swartz, ReNika C.
Moore, on the brief), for plaintiffs.

Dan Woods, White & Case LLP, New York,
NY (Daniel P. Goldberg and Timothy M. Rusche,
on the brief), for defendant.


GERARD E. LYNCH, District Judge:

      In this action brought under the Federal Labor Standards Act ("FLSA"), plaintiffs move

for court-authorized notice to potential opt-in plaintiffs pursuant to 29 U.S.C. § 216(b).[1]  The

motion will be granted.

---

     [1]  After receiving notice that the parties were entering mediation, this Court issued an
Order on June 5, 2006, deeming the instant motion withdrawn, without prejudice to its
resubmission in the event that mediation proved unsuccessful; the Order further indicated that,
should mediation fail, plaintiffs could reinstate the motion by sending a letter directly to
chambers.  After mediation failed in July 2006, plaintiffs submitted a letter to chambers
requesting that the Court reinstate the motion.

**BACKGROUND**

On November 5, 2004, plaintiff Kelvin Damassia brought suit on behalf of himself and

others similarly situated against his former employer, Duane Reade, Inc. ("defendant" or "Duane

Reade"), alleging principally that Duane Reade had failed to pay overtime wages in accordance

with FLSA and New York state law.  See 29 U.S.C. § 207; N.Y. Lab. Law § 650 et seq.

According to the complaint, plaintiff worked for approximately seventh months as an assistant

night manager at one of Duane Reade's 252 retail drugstores in the New York City metropolitan

area.  Despite being designated an assistant "manager," plaintiff claims that he performed "few

or no" managerial duties at the store (Complaint ¶¶ 2-3; see also Second Amended Complaint

("SAC") ¶¶ 2-3), and that Duane Reade employed the term "assistant manager" in an effort to

evade overtime requirements under FLSA's "bona fide executive" exemption for salaried

managerial employees.  See 29 U.S.C. § 213(a).  An amendment to the complaint named Arnold

Caballero as an additional plaintiff; Caballero's allegations are substantially similar to

Damassia's.  (See, e.g., First Amended Complaint ¶¶ 44-52.)

Defendant moved to dismiss the amended complaint in part, and for partial summary

judgment, arguing that plaintiff Damassia's claims were time barred.  Defendant also argued that

a 2003 Department of Labor ("DOL") audit had determined that defendant acted properly in

classifying assistant night managers as "bona fide executives" exempt from overtime

requirements.  According to defendant, the DOL's finding created a statutory affirmative defense

of good faith under 29 U.S.C. § 259, warranting judgment as a matter of law.  Rejecting these

arguments, the Court denied defendant's motion on May 22, 2005.  See Damassia v. Duane

Reade, Inc., 04 Civ. 8819 (GEL), 2005 WL 1214337, at *1 (S.D.N.Y. May 20, 2005).

Between September 1 and November 15, 2005, about twenty individuals who had

worked as assistant night managers filed forms with the Court consenting to be party plaintiffs

pursuant to FLSA's opt-in provision, 29 U.S.C. § 216(b).[2]  On November 4, 2005, plaintiffs filed

the instant motion seeking court-authorized notice to potential opt-in plaintiffs.   After the

motion was fully briefed, plaintiffs filed a second amended complaint naming eight new

plaintiffs in addition to Damassia and Caballero.  The new plaintiffs — Dayanand Baldeo,

Marlon Fergus, Mohammed Hoque, Muhammed Khawaja, Ifeanyi Malu, Mourad Mansy,

Maxwell Okeke, and Delfin Ruiz — were among those who had already submitted consent

forms under § 216(b).  All of the plaintiffs worked as assistant night managers and allege

violations of state and federal overtime requirements.

## DISCUSSION

I.      FLSA Overtime Requirements and the "Bona Fide Executive" Exemption

Though the merits of plaintiffs' claims need not be resolved at this stage, an

understanding of those claims will be helpful in analyzing plaintiffs' motion for court-authorized

notice.  The main provision under which plaintiffs sue is 29 U.S.C. § 207, which requires

employers to pay their employees at a rate of "one and one-half times the regular rate at which

[the employee] is employed" for each hour worked in excess of forty hours in a single week.  29

U.S.C. § 207(a)(1).  The requirement does not apply, however, with respect to certain categories

of employees, including those that are "employed in a bona fide executive . . . capacity."  29

U.S.C. § 213(a)(1).  The "bona fide executive" exemption is an affirmative defense on which the

---

[2]  Some of the opt-in plaintiffs and potential opt-in plaintiffs may still work at Duane
Reade.  (See, e.g., Ajami Dec. Ex. T ¶ 1.)  For the sake of simplicity and consistency, the Court
will generally refer to plaintiffs' and opt-in plaintiffs' employment activities in the past tense.

defendant bears the burden of proof, see Corning Glass Works v. Brennan, 417 U.S. 188, 196-97

(1974), and is narrowly construed against the employer, see Bilyou v. Dutchess Beer Distribs.,

Inc., 300 F.3d 217, 222 (2d Cir. 2002).

Pursuant to federal regulations, an employer may only apply the "bona fide executive"

exemption to employees:

> (1) [Who are c]ompensated on a salary basis at a rate of not less
> than $455 per week . . . ;
> (2) Whose primary duty is management of the enterprise in which
> the employee[s] [are] employed or of a customarily recognized
> department or subdivision thereof;
> (3) Who customarily and regularly direct[] the work of two or
> more other employees; and
> (4) Who ha[ve] the authority to hire or fire other employees or
> whose suggestions and recommendations as to the hiring, firing,
> advancement, promotion or any other change of status of other
> employees are given particular weight.

29 C.F.R. § 541.100.  The regulations provide guidance to courts applying this provision by

defining several of its key terms in detail.  See, e.g., id. § 541.102 (defining "management"); id.

at § 541.103 (defining "department or subdivision"); id. at § 541.105 (defining "particular

weight"); id. § 541.700 (defining "primary duty").[3]

II.     Collective Actions and Court-Authorized Notice

FLSA allows employees to sue on behalf of themselves as well as employees who are

"similarly situated."  29 U.S.C. § 216(b).  The similarly situated employees may "opt in" to the

lawsuit and become party plaintiffs by filing a written consent with the court.  See Masson v.

---

[3]  The regulations were amended in mid-2004.  Compare 29 C.F.R. § 541.1 (2004), with
29 C.F.R. § 541.100 (2006).  While the differences between the current regulations and those
previously in effect will be relevant to the merits of plaintiffs' claims, the differences are
sufficiently minor as to be irrelevant for purposes of analyzing the motion for court-authorized
notice.

Ecolab, Inc., 04 Civ. 4488 (MBM), 2005 WL 2000133, at *13 (S.D.N.Y. Aug. 17, 2005).  In a

collective action under FLSA — unlike in a class action under Federal Rule of Civil Procedure

23 — only plaintiffs who affirmatively opt in can benefit from the judgment or be bound by it.

Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101, 103-04 (S.D.N.Y. 2003).

Though § 216(b) does not expressly provide for court-authorized notice to potential opt-

in plaintiffs in a collective action, "it is 'well settled' that district courts have the power to

authorize an FLSA plaintiff to send such notice."  Id., quoting Hoffman v. Sbarro, Inc., 982 F.

Supp. 249, 260 (S.D.N.Y. 1997) (additional citations and internal quotation marks omitted); see

Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165 (1989); Braunstein v. E. Photographic Labs.,

Inc., 600 F.2d 335 (2d Cir. 1979).  Orders authorizing notice are often referred to as orders

"certifying" a collective action, even though FLSA does not contain a certification requirement.

See Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006); Scholtisek v. Eldre

Corp., 229 F.R.D. 381, 387 (W.D.N.Y. 2005).  When a court certifies a collective action, it may

require an employer to disclose the names and addresses of potential plaintiffs. See Patton v.

Thomson Corp., 364 F. Supp. 2d 263, 266 (E.D.N.Y. 2005).

Courts in this circuit and elsewhere have held that a court may authorize notice — and

certify a collective action — if the court makes a "preliminary determination" that potential opt-

in plaintiffs are "similarly situated" to the named plaintiffs.[4]  Patton, 364 F. Supp. 2d at 267

(citations and internal quotation marks omitted); see Trezvant v. Fidelity Employer Servs. Corp.,

434 F. Supp. 2d 40, 43 (D. Mass. 2006); Lee, 236 F. Supp. 2d at 197; Sbarro, 982 F. Supp. at

---

[4] The Second Circuit has yet to provide standards to apply in determining whether court-authorized notice is appropriate.

261; cf. Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1217 (11th Cir. 2001) ("[P]laintiffs

need show only that their positions are similar, not identical, to the positions held by the putative

class members." (alteration in original) (citation and internal quotation marks omitted)).  While

this normally requires a "modest factual showing" that the plaintiff and the potential plaintiffs

were victims of a common policy or plan violating FLSA, Gjurovich, 282 F. Supp. 2d at 104

(citation and internal quotation marks omitted), it may be appropriate in some cases to find

plaintiffs and potential plaintiffs similarly situated based simply on plaintiffs' "substantial

allegations" that they and potential plaintiffs were common victims of a FLSA violation,

particularly where defendants have admitted that the actions challenged by plaintiffs reflect a

company-wide policy.  Ayers v. SGS Control Servs., Inc., 03 Civ. 9078 (RMB) (RLE), 2004 WL

2978296, at *5 (S.D.N.Y. Dec. 21, 2004); Rodolico v. Unisys Corp., 199 F.R.D. 468, 480

(E.D.N.Y. 2001).  In either case, a plaintiff's burden at this preliminary stage is "minimal."

Wraga v. Marble Lite, Inc., 05 Civ. 5038 (JG) (RER), 2006 WL 2443554, at *1-*2 (E.D.N.Y.

Aug. 22, 2006); see Kreher v. City of Atlanta, 04 Civ. 2651 (WSD), 2006 WL 739572, at *3

(N.D. Ga. Mar. 20, 2006); Lee, 236 F.R.D. at 197; Scholtisek, 229 F.R.D. at 387; Dietrich v.

Liberty Square, L.L.C., 230 F.R.D. 574, 578-79 (N.D. Iowa 2005); Gjurovich, 282 F. Supp. 2d at

104; see also Young v. Cooper Cameron Corp., 229 F.R.D. 50, 55 (S.D.N.Y. 2005) (describing

plaintiffs' burden as "very limited"); cf. Cameron-Grant v. Maxim Healthcare Servs., Inc., 347

F.3d 1240, 1243 n.2 (11th Cir. 2003) (noting that courts "us[e] a fairly lenient standard" in

deciding whether notice is proper).  A court need not evaluate the underlying merits of a

plaintiff's claims to determine whether the plaintiff has made the minimal showing necessary for

court-authorized notice.  Scholtisek, 229 F.R.D. at 391; Gjurovich, 282 F. Supp. 2d at 105;

Sbarro, 982 F. Supp. at 262.

Plaintiffs who opt in to a collective action after a court authorizes notice do not

necessarily remain parties to the action through trial.  After discovery, courts typically engage in

a "second tier" of analysis to determine on a full record — and under a more stringent standard

— whether the additional plaintiffs are in fact similarly situated.  Morden v. T-Mobile USA,

Inc., 05 Civ. 2112 (RSM), 2006 WL 2620320, at *4 (W.D. Wash. Sept. 12, 2006); Gjurovich,

282 F. Supp. 2d at 105.  If the factual record reveals that the additional plaintiffs are not

similarly situated to the original plaintiffs, the collective action is "decertified," and the claims of

the opt-in plaintiffs are dismissed without prejudice.  Lee, 236 F.R.D. at 197; Scholtisek, 229

F.R.D. at 387.[5]

Defendant suggests that the court should skip the initial inquiry, reasoning that discovery

has already provided "sufficient evidence" to justify a "final" determination that plaintiffs are

not similarly situated.  (D. Mem. in Opposition to P. Mot. for Court-Authorized Notice ("D.

Mem.") at 2, 20-22.)  Fact discovery is in its early phases, however.  At the time the instant

motion was fully briefed, defendant had deposed only about half of the twelve opt-in plaintiffs

---

[5] Some courts, rather than employing the two-tiered analysis described here, have simply
relied on Federal Rule of Civil Procedure 23's requirements for class certification to determine
whether court-authorized notice is warranted under 29 U.S.C. § 216(b).  See Thiessen v. Gen.
Elec. Capital Corp., 267 F.3d 1095, 1102-03 (10th Cir. 2001) (describing varying approaches to
motions for court-authorized notice under § 216(b)).  Other courts have relied on the
requirements of the pre-1966 version of Federal Rule 23.  See Thiessen, 267 F.3d at 1102-03.
As the Thiessen court explained, however, "Congress clearly chose not to have the Rule 23
standards apply to [§ 216(b)], and instead adopted the 'similarly situated' standard.  To now
interpret this 'similarly situated' standard by simply incorporating the requirements of Rule 23
(either the current version or the pre 1966 version) would effectively ignore Congress'
directive."  267 F.3d at 1105; see also Vogel v. Am. Kiosk Mgmt., 371 F. Supp. 2d 122, 127 (D.
Conn. 2005) ("[T]he prevailing view in the Second Circuit, and other Circuits, is that actions . . .
pursuant to section 216(b) of the FLSA are not subject to Rule 23 requirements and principles.").

who submitted declarations in support of court-authorized notice (see id. at 5 n.3; D. Supplemental Mem. in Opposition to P. Mot. for Court-Authorized Notice ("D. Supp. Mem.") at 1), and plaintiffs had not yet had an opportunity to depose *any* of the 56 individuals who submitted affidavits in support of defendant's opposition (P. Reply at 7 n.4).  The deadline for fact discovery, moreover, does not fall until three months after the Court's Rule 23 class certification decision (8/5/05 Case Management Plan at 3), and the motion for class certification is not even due until December 2006.  (8/28/06 Endorsed Letter at 2.)  It would therefore be inappropriate to make more than a "preliminary determination" at this time, or to require plaintiffs to meet a more stringent standard than typically applied at the early stages of litigation. See Prizmic v. Armour, Inc., 05 Civ. 2503 (DLI) (MDG), 2006 WL 1662614, at *2 (E.D.N.Y. June 2, 2006) ("Only *after discovery has been completed* should the Court engage in a second more heightened stage of scrutiny to determine whether the class should be decertified or the case should proceed to trial as a collective action." (emphasis added)); Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 482 (E.D. Cal. 2006) (noting that "*[w]here discovery is complete*, courts sometimes bypass" the preliminary determination and apply the more stringent analysis for a final determination (emphasis added)).

III.     Plaintiffs' Motion for Court-Authorized Notice

Plaintiffs' affidavits and allegations, taken together with defendant's admissions, more than suffice to entitle plaintiffs to court-authorized notice in this case.  Plaintiffs' complaint alleges, for example, that plaintiffs are similarly situated to each other and to potential opt-in plaintiffs, because (1) none of them, despite the title of their position, performed primarily managerial duties at Duane Reade stores (see, e.g., SAC ¶¶ 59-155), and (2) defendant, relying

without basis on FLSA's "bona fide executive" exemption, see 29 U.S.C. § 213(a), subjected

them and other assistant night managers to a company-wide policy depriving them of overtime

compensation in violation of 29 U.S.C. § 207 (see, e.g., SAC ¶ 56).  The affidavits of plaintiffs

and opt-in plaintiffs support these allegations (see Ajami Dec. Exs. K-V), as do the official job

descriptions produced by Duane Reade regarding assistant managers (id. Exs. F, G; see also id.

Ex. W).  Significantly, defendant has twice conceded to the Court that the business practices at

issue in this case are uniform among its stores.  (See 2/7/05 Rizzo Dec. at ¶ 2; 12/22/04 Rizzo

Dec. at ¶ 2.)  Defendant also concedes that it applies the "bona fide executive" exemption to all

assistant night managers.  (See, e.g., D. Mem. at 1, 2-3, 6.)[6]

        In opposing court-authorized notice, defendant dedicates a substantial portion of its briefs

to the misplaced argument that plaintiffs' claims fail on the merits.  (D. Mem. at 1, 3-11; D.

Supp. Mem. at 1-3.)  As noted above, courts need not resolve the merits in order to find plaintiffs

and potential opt-in plaintiffs similarly situated for purposes of authorizing notice.[7]  See

---

        [6] Defendant claims that its classification of assistant night managers as exempt dates
back to a ruling by an arbitrator in 1998, who allegedly found that assistant night managers
"should be salaried, exempt employees."  (D. Mem. at 1.)  The arbitrator found no such thing,
but rather concluded only that assistant managers hired after September 1, 1998, would not be
members of a collective bargaining unit.  (See Request for Judicial Notice in Support of D. Opp.
to P. Mot., Ex. A at 13.)

        [7] Though the Court need not analyze defendant's arguments on the merits at this stage, it
is worth bringing one substantial flaw in those arguments to the parties' attention, particularly in
view of the fact that defendant's misconceptions have infected its briefing on the instant motion.
Defendant appears to believe that evidence demonstrating a difference between the
responsibilities of assistant night managers and the responsibilities of stock clerks necessarily
supports a finding that assistant night managers are properly subject to the bona fide executive
exemption.  (See, e.g., D. Mem. at 10.)  The question on the merits, however, will be whether, in
view of the functions they perform as assistant night managers, plaintiffs satisfy the requirements
of the bona fide executive exemption, as specified in federal statutes, regulations and case law.
The mere fact that plaintiffs' job responsibilities differ from, and are more important than, the
responsibilities of stock clerks does not necessarily mean that the requirements of 29 C.F.R.

Scholtisek, 229 F.R.D. at 391; Gjurovich, 282 F. Supp. 2d at 105; Sbarro, 982 F. Supp. at 262;

see also Young, 229 F.R.D. at 54 ("The focus of this inquiry . . is not on whether there has been

an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated'. . .

with respect to their allegations that the law has been violated."). Defendant baldly asserts that

this view of the law is "incorrect," but it does not cite a single authority to support its position.

(D. Mem. at 8.)[8]

In some portions of its briefs, defendant comes closer to focusing on the proper question,

arguing that plaintiffs and potential opt-in plaintiffs are not similarly situated for purposes of

§ 216(b). However, defendant's position is fatally undermined — at least for purposes of the

instant motion — by earlier concessions to the Court. In two sworn declarations submitted in

support of Duane Reade's unsuccessful motion to dismiss in part or for partial summary

judgment, Duane Reade's Vice President of Human Resources, James Rizzo, acknowledged that

Duane Reade's "relevant business practices" with respect to assistant night managers were

uniform among its stores. (See 2/7/05 Rizzo Dec. at ¶ 2; 12/22/04 Rizzo Dec. at ¶ 2.) The

concessions were reinforced by Mr. Rizzo's testimony at an October 20, 2005, deposition,

---

§ 541.100 and related provisions are satisfied. See also 29 C.F.R. § 541.1 (2004). In other
words, employees do not become bona fide executives under FLSA simply because there are
employees lower than them in the company's hierarchy. It is possible that *both* stock clerks *and*
assistant night managers are entitled to overtime compensation, even if assistant night managers
have more authority and more responsibility than the clerks.

[8] Defendant argues that the merits are at issue "because a requirement for granting this
motion [for court-authorized notice] is that plaintiffs and potential collective action members
were victims of a common policy or plan in violation of the law." (D. Mem. at 8.) This
misstates the law. As explained supra, plaintiffs need not definitively *prove* that they were
victims of a common illegal policy. At most, they need only make a modest factual showing in
support of their allegation that they were victims of such a policy. The Court, moreover, only
needs to make a *preliminary* determination at this stage.

during which he agreed with the questioning attorney that "one can draw accurate conclusions

about assistant managers company wide by looking at assistant managers in . . . Westchester,"

New York.  (10/20/05 Rizzo Dep. at 68-69.)[9]  Mr. Rizzo explained that Duane Reade relied on

the Department of Labor's 2003 audit of labor practices at the Westchester stores to conclude

that the general characterization of assistant night managers as exempt executives throughout

Duane Reade stores was legal.  (Id. at 68-69, 75-76.)  To the Court's surprise, defendant argues

again in its brief opposing court-authorized notice that the DOL's 2003 audit of a few

Westchester stores allows one to draw company-wide conclusions about the employment

activities of assistant night managers.  (See D. Mem. at 1, 3.)  These arguments and concessions

are difficult, if not impossible, to reconcile with defendant's claim that there are significant

variations in the work performed by assistant night managers at different stores which preclude a

finding that plaintiffs and potential opt-in plaintiffs are similarly situated.

        Even if one looks past defendant's concessions with respect to its uniform business

practices, its challenges to plaintiffs' factual showing are both inadequate and premature.  As

emphasized above, the question at this early stage is only whether, applying a "lenient" standard,

the court is satisfied that plaintiffs, through their allegations, affidavits and other evidence, have

met their "minimal" burden of demonstrating entitlement to a "preliminary" determination that

they are similarly, even if not identically, situated with respect to their FLSA claims.  At most,

defendant's attacks on plaintiffs' affidavits and other evidence raise questions as to whether

---

        [9] Defendant's concessions of uniform business practices with respect to assistant night
managers distinguish this case from cases cited by defendant, in which courts found that an
inquiry into whether potential plaintiffs were exempt under 29 U.S.C. § 213(a)(1) would require
an individualized analysis for each employee.  See, e.g., Diaz v. Elecs. Boutique of Am., Inc., 04
Civ. 840, 2005 WL 2654270, at *2 (W.D.N.Y. Oct. 17, 2005); Mike v. Safeco Ins. Co. of Am.,
274 F. Supp. 2d 216, 220 (D. Conn. 2003).

plaintiffs could prevail under a more stringent standard and whether the opt-in plaintiffs will

survive a decertification motion at the close of discovery; defendant's arguments and evidence

do not, however, undermine plaintiffs' "modest factual showing" to such an extent that a

preliminary determination in favor of plaintiffs is unwarranted at this stage.

Much of the problem with defendant's attack on plaintiffs' factual showing is that

defendant focuses on alleged differences among plaintiffs and among Duane Reade stores that

have little if anything to do with whether plaintiffs are similarly situated "*with respect to their*

*allegations that the law has been violated.*" Young, 229 F.R.D. at 54 (emphasis added).

Defendant claims, for example, that plaintiffs' deposition testimony proves wide variance in

plaintiffs' abilities and competence, and in the length of time they worked at Duane Reade

stores. (D. Mem. at 16.) But such facts, even if true, do not undermine plaintiffs' claim that they

are similarly situated with respect to their allegation that defendant's company-wide

compensation policies violate FLSA's overtime requirements. Plaintiffs and opt-in plaintiffs

may be similarly entitled to overtime compensation regardless of whether some of them

performed their jobs less competently or worked at Duane Reade for a shorter amount of time.

Defendant also points to evidence in plaintiffs' deposition testimony that trucks made

deliveries during some of plaintiffs' shifts but not during other plaintiffs' shifts; that some

plaintiffs took breaks more often than others; that some plaintiffs had the authority to arrange

store displays, while others did not; and that there was variation among the stores at which

plaintiffs worked with respect to the stores' location, their layout, their hours of operation, the

amount of customer traffic, the amount of office space, the number of "RF guns" used for

inventory, the amount of money in the safe, the location of cigarette cartons, and the frequency

with which outside cleaning crews visited the store.  (D. Mem. at 15-18; D. Supp. Mem. at 4.)

Such differences are hardly relevant to whether plaintiffs and potential opt-in plaintiffs were

common victims of an illegal application of the "bona fide executive" exemption to overtime

compensation requirements.  On defendant's logic, no group of opt-in plaintiffs would ever be

"similarly situated" unless they were clones of one another working in completely identical

stores, in identical neighborhoods, with identical clientele.

That is not to say that all of defendant's arguments are misplaced or irrelevant.

Defendant contends, for example, that according to plaintiffs' own testimony, assistant store

managers had varying amounts of authority with respect to "writing-up" employees, approving

employee discounts, training other employees, and determining which supplies to purchase.  (D.

Mem. at 17.)  Whether such differences existed is plainly relevant to whether plaintiffs and

potential plaintiffs are similarly situated with respect to the bona fide executive exemption.

See 29 C.F.R. § 541.102 (defining "management" activities for purposes of § 541.100 to include

training and disciplining employees, and determining the types of supplies to be purchased,

stocked, and sold); see also 29 C.F.R. § 541.102 (2004).

To a large extent, however, defendant has mischaracterized plaintiffs' testimony.  For

instance, though defendant cites plaintiffs' testimony for the proposition that the authority of

assistant store managers to train employees varied among stores, the deposition testimony on

which defendant relies does not support that assertion.  (See D. Mem. at 17.)  Two of the cited

witnesses testified that they trained employees to a limited extent (Baldeo Dep. at 252; Caballero

Dep. at 204-06); another witness testified that there were no new employees to train during his

short time at Duane Reade (Damassia Dep. at 130); and a fourth witness testified that he could

not recall whether he trained any employees (Malu Dep. at 269).[10]  In support of the alleged

variance in assistant managers' authority to purchase supplies for the store, defendant cites the

testimony of two witnesses, but neither of them claim that ordering store supplies formed part of

their responsibilities.  (Caballero Dep. at 186; Malu Dep. at 255.)[11]

        In addition to attacking the testimony of plaintiffs' witnesses, defendant has submitted 56

affidavits from assistant managers who purportedly "performed their jobs very differently than

those who presented declarations to the Court" on behalf of plaintiffs.  (D. Mem. at 18.)

According to defendant, the affidavits demonstrate that these 56 assistant managers exercised

primarily managerial responsibilities.  It is unclear, however, what defendant intends to

accomplish with this argument.  On the one hand, by emphasizing that the affiants have "very

different[]" job responsibilities than the named plaintiffs and are thus not "similarly situated" to

the plaintiffs, defendant appears to be conceding, albeit indirectly, that the named plaintiffs did

*not* perform primarily managerial responsibilities.  Such an argument, of course, is incompatible

with defendant's insistence that the named plaintiffs performed primarily managerial functions

and that they therefore satisfied the requirements of the bona fide executive exemption.  On the

other hand, to the extent defendant presents the 56 affidavits as evidence that all assistant

managers, including plaintiffs, exercise substantial management responsibilities, defendant is not

only making a premature argument on the merits, but appears to be conceding that plaintiffs and

---

        [10]  Defendant's supplemental brief provides information on the training responsibilities of
additional employees, but fails to demonstrate any significant variance in those responsibilities.
The brief explains that one of the additional employees trained employees, while the other had
no need or opportunity to do so.  (D. Supp. Mem. at 6.)

        [11]  Caballero testified that he would make a list of items when the store ran out of them,
and pass the list along to his superior.  If, during the night, the store ran out of bags, he would
call another store to request more.  (Caballero Dep. at 186.)

other assistant night managers are similarly situated.

In any event, even assuming that defendant could construct an internally consistent argument against court-authorized notice based on the 56 affidavits, the evidentiary value of the affidavits is sharply limited by the fact that plaintiff had not yet had an opportunity, at the time the instant motion was fully submitted, to depose any of the affiants. (See P. Reply Mem. at 7 n.4.) Given that the Court must be "lenient" in deciding whether plaintiff has met its "minimal" burden at this stage, untested evidence such as the affidavits submitted by defendant cannot, under the circumstances present here, defeat plaintiffs' entitlement to a preliminary determination that they are similarly situated to other assistant night managers. At the close of discovery, defendant will have ample opportunity to explain why the affidavits, taken with other evidence, demonstrate that plaintiffs' case should not proceed as a collective action.

In sum, because plaintiffs' allegations, affidavits and additional evidence, considered in light of defendant's concessions regarding its business practices, more than suffice to support a preliminary determination that plaintiffs and potential opt-in plaintiffs are similarly situated, plaintiffs' motion for court-authorized notice is granted.

IV.    Identification of, and Communication with, Potential Opt-In Plaintiffs

Plaintiffs request that the Court order defendant to provide "an updated computer-readable data file containing the names, last known mailing addresses, telephone numbers, and Social Security numbers of all current and former employees of defendant who have worked as assistant managers on the night shift for the past three years." (P. Mem. at 2 n.1.) The Court agrees with defendant that it is unnecessary and inappropriate to provide Social Security numbers at this time. In all other respects, the plaintiffs' request is granted. The "past three

years" shall be interpreted to mean the three years prior to the filing of this Opinion and Order.

The parties are willing to negotiate the content of the proposed notice.  Such negotiations shall take place by November 15, 2006.  In the event of a dispute, the parties shall jointly submit a single letter to the Court setting forth their respective positions.  Defendant shall be permitted to review the "Consent Form" postcard to which the plaintiffs' proposed notice refers.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for court-authorized notice is granted. Details regarding the content and communication of the notice shall be negotiated in accordance with Part IV of this Opinion and Order.

SO ORDERED.

Dated: New York, New York
       October 4, 2006

                                        GERARD E. LYNCH
                                        United States District Judge