**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KELVIN DAMASSIA, ARNOLD CABALLERO DAYANAND BALDEO, MARLON FERGUS, MOHAMMED HOQUE, MUHAMMED KHAWAJA, IFEANYI MALU, MOURAD MANSY, MAXWELL OKEKE and DELFIN RUIZ, on behalf of themselves and all others similarly situated,<br><br>                        Plaintiffs,<br>-against-<br><br>DUANE READE, INC.,<br><br>                        Defendant,<br>------------------------------------------------------------X | 04 Civ. 08819 (GEL) |
| ENAMUL CHOWDHURY, Individually and on Behalf of All Others Similarly Situated,<br><br>                        Plaintiff,<br>-against-<br><br>DUANE READE, INC. and DUANE READE HOLDINGS,<br><br>                        Defendants. | 06 Civ. 02295 (GEL) |

**DECLARATION OF LINDA A. NEILAN
IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND
PLAINTIFFS' UNOPPOSED MOTION FOR SERVICE AWARDS**

I, Linda A. Neilan, declare as follows:

       1.     I am a partner in the firm of Outten & Golden LLP in New York, New York, Plaintiffs' counsel herein. Along with Seth Lesser and Fran Rudich of Klafter Olsen & Lesser LLP, we are Class Counsel in these matters. *Damassia v. Duane Reade,*

*Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008).

2. Since 2007, I have been one of the lawyers primarily responsible for the prosecution of Plaintiffs' claims on behalf of the Class against Defendants.

3. I submit this declaration in support of Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Reimbursement of Expenses, and Plaintiffs' Unopposed Motion for Service Awards, and in order to present the Court with a comprehensive explanation of our work on these matters. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently to such facts.

**Time Spent on the Litigation**

4. O&G and Klafter Olsen & Lesser LLP[1] have experience prosecuting large scale wage and hour class and collective actions such as this. Class Counsel's experienced representation in this case was directly responsible for bringing about the positive settlement and weighs in favor of granting the requested fees.

5. As of July 7, 2009, O&G spent more than 4,269 hours during the more than five years it spent litigating and settling these cases, which includes more than 2,936 attorney hours, 65 law clerk hours, and 1,267 paralegal and administrative hours. O&G also incurred $63,066 in out-of-pocket costs prosecuting this case, which were incidental and necessary to the representation of the Class, and include costs for depositions, mediations, mailing of notices to the class, telephone charges, postage, transportation, photocopies, electronic research, and more. Attached as **Exhibit A** is a summary of all of our costs and all of the time spent by each attorney, law clerk, and paralegal.

---

[1] Seth Lesser and Fran Rudich were associated with Locks Law Firm PLLC when these lawsuits were filed.

6.     As of July 1, 2009, Klafter Olsen & Lesser LLP spent more than 551 hours during the more than three years it spent litigating and settling these cases, which includes more than 379 attorney hours, 23 law clerk hours, and 148 paralegal and administrative hours.  Klafter Olsen & Lesser LLP incurred $22,168 in out-of-pocket costs prosecuting this case.  (Lesser Dec. ¶ 4.)

7.     The hours reported are reasonable for a case of this complexity and magnitude and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case.

8.     Although O&G is relatively large for a plaintiffs' side employment law firm, a small team of attorneys and staff were utilized at any one time in order to minimize duplication of efforts and maximize billing judgment.  We communicated regularly with Klafter, Olsen & Lesser LLP to ensure that there was not unnecessary time incurred, nor duplication of effort.  We also made every effort to have work performed by the attorney or paralegal with the lowest hourly rate who was able to effectively perform it.

9.     As of July 7, 2009, the total lodestar on the case was $1,766,109, and the total out-of-pocket costs was $85,234.  Class Counsel requests from the Settlement Fund $1,414,766 for attorneys' fees and $85,234 for costs.  Class Counsel's request for $1,414,766 for fees is approximately 80% of lodestar, far less than what Courts have awarded in similar cases.  Courts routinely award lawyers two to three times lodestar in class action settlements.

10.     Class Counsel has contemporaneous time records for this case that they can provide the Court.

**Risks of Litigation**

11. Class Counsel undertook to prosecute these actions without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of tremendous risk. Large-scale wage and hour cases of this type are, by their very nature are complicated and time-consuming. Lawyers undertaking representation of large numbers of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Class Counsel stood to gain nothing in the event the case was unsuccessful.

12. To date, Class Counsel has worked without compensation of any kind, and the fee has been wholly contingent upon the result achieved.

13. The facts and circumstances of these cases presented numerous and substantial hurdles to a successful recovery of unpaid wages. Defendants informed us that they are experiencing financial problems in the wake of the current financial crisis and provided us with their financial records demonstrating same. Class Counsel faced the real possibility that they would be unable to collect from Defendants even if Plaintiffs prevailed at trial given the effect of the current financial downturn.

**History of Discovery and Litigation**

14. The parties engaged in substantial litigation before agreeing to resolve this case.

15. Before and during the formal litigation of this action, attorneys and paralegals from Outten & Golden LLP and Klafter Olsen & Lesser LLP conducted a

thorough investigation into the merits of the potential claims and defenses. We focused our investigation and legal research on the underlying merits of class members' claims, the damages to which they were entitled, and the propriety of class certification.

16. We interviewed dozens of individuals who provided us with information regarding the duties they performed for Duane Reade, the hours that they worked, the wages they received, and other information relevant to their claims.

17. Based on these interviews, we obtained supportive declarations from approximately 26 assistant store managers.

18. The parties took several depositions. Defendants took 25 depositions of plaintiffs and opt-in plaintiffs.

19. We took three depositions pursuant to Fed. R. Civ. P. 30(b)(6). On October 20, 2005 and again on February 16, 2006, James Rizzo, Vice President of Human Resources and Duane Reade's corporate designee pursuant to Fed. R. Civ. P. 30(b)(6), testified regarding Defendants' corporate structure and policies and practices concerning compensation and benefits of assistant store managers, time keeping, records maintenance, and other issues.

20. On February 15, 2006, Michael DeFazio, Director of Store Operations and Duane Reade's corporate designee pursuant to Fed. R. Civ. P. 30(b)(6), testified regarding Duane Reade's policies and practices concerning job duties of assistant store managers, the scope of assistant store managers' responsibilities and authority, uniform training of employees, the work flow process of the store, and other issues.

21. Defendants produced thousands of pages of hard-copy documents and electronically-stored data including, but not limited to, personnel records, performance

evaluations, employee handbooks, training manuals, payroll data, time records, job descriptions, and wage and hour policies. Plaintiffs produced W-2s, earning statements, pay stubs, payroll forms, and new hire documents.

22. The parties engaged in extensive motion practice with Plaintiffs defending against a motion to dismiss and a second motion to dismiss or for summary judgment, twice moving for court-authorized notice pursuant to § 216 of the FLSA, and filing one consolidated motion for class certification.

**Settlement Negotiations**

23. On two separate occasions, the parties agreed to participate in private, non-binding mediation in order to resolve these cases. The first mediation session was held on July 14, 2006 with Hunter Hughes. The parties did not reach a settlement at this mediation.

24. Two years later, after the Court had granted Plaintiffs' motion for class certification and collective action, the parties revisited settlement negotiations with a second mediation session held on October 7, 2008 with Linda Singer of JAMS, an experienced mediator in employment law.

25. Although the parties did not reach a settlement that day, they continued to discuss settlement following the mediation and, on December 31, 2008, the parties reached a settlement and signed a Memorandum of Understanding.

26. In February 2009, the parties executed the Joint Settlement and Release.

**Preliminary Approval Motion and Claims Administration**

27. On March 19, 2009, Plaintiffs filed their Motion for Preliminary Approval of Settlement in which they requested that the Court grant preliminary approval of the Settlement Agreement and approve the Notice.

28. On March 25, 2009, the Court granted Plaintiffs' Motion for Preliminary Approval.

29. On May 7, 2009, the parties' jointly selected claims administrator, The Garden City Group, Inc. ("Claims Administrator"), sent the court-approved Notice to the class members listed on the class list provided by Defendants.

30. Throughout the notice process, we have worked with the Claims Administrator and Defendants to ensure that the Claims Administrator had all of the data necessary to send notice to the Class and apply the allocation formula.

31. Attached as **Exhibit B** hereto is the Declaration of Jason Zeuna of The Garden City Group, Inc., appointed by the Court to serve as Claims Administrator, whose affidavit sets forth the notice that was effectuated pursuant to the Court's direction in the order preliminarily approving the settlement and the response of the class.

32. The Claims Administrator has informed us that their fees and expenses incurred to date as part of the settlement administration are approximately $29,000. They also informed us that they estimate that they will incur another $32,000 to complete the administration through distribution, and for one year after the initial distribution (including state wage and settlement fund tax filings).

33. O&G has received dozens of calls from Class Members and Class Representatives with questions about the settlement. We expect these calls to continue

7

after final approval when checks are issued. In our experience, administering class settlements of this nature and size requires a substantial and ongoing commitment.

34. The average settlement for the 829 Class Members who submitted Claim Forms and Releases is approximately $4,222 before attorneys' fees and costs are deducted.

35. No Class Member or Class Representative has objected to Plaintiffs' attorneys' fees or costs requests.

**The Class Representatives' Efforts Were Significant**

36. The Class Representatives have made significant efforts on behalf of Class Members in this case. They regularly corresponded with Class Counsel to discuss case strategy, informed Class Members of their right to join the lawsuit, encouraged Class Members to participate in the lawsuit, helped identify and locate potential Class Members, answered factual questions for Class Counsel, signed declarations, produced documents, and generally relayed information to Class Members throughout the period that this action has been pending.

37. The Class Representatives were integral in initiating this class action and made significant contributions to the prosecution of this litigation. In addition to providing valuable assistance and guidance to Class Counsel, they discharged their obligations to the class with diligence.

38. No Class Member or Class Representative has objected to the service awards.

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 9th day of July, 2009
New York, New York

                                           /s/ Linda A. Neilan
                                           Linda A. Neilan
                                           **Outten & Golden LLP**
                                           3 Park Avenue, 29th Floor
                                           New York, NY  10016
                                           Telephone:  (212) 245-1000

9